ALAN BUTLER, Plaintiff-Appellee, v. THE BOARD OF REVIEW, ILLINOIS DEPARTMENT OF LABOR, et al., Defendants-Appellants.

Fifth District   No. 5—84—0241

Opinion filed August 15, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of Chicago, of counsel), for appellants.

G. Bradley Hantla, Ltd., of Litchfield, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The question presented for review is whether Alan Butler, formerly a computer programmer for the Department of Mental Health in Springfield and commuter bus driver for Cavallo Bus Lines, should be denied unemployment benefits on the grounds that he voluntarily left his part-time bus driving job without good cause attributable to his employing unit. Butler quit his part-time bus driving job when he was laid off from his full-time job at the Department of Mental Health (DMH) in Springfield. For the reasons that follow, we find that Butler is not entitled to receive unemployment benefits on his leaving of Cavallo, and due to an inadequate record we are unable to determine the reason why DMH was apparently relieved of responsibility, if DMH was given notice of the claim against it.

The claims adjudicator who initially evaluated Mr. Butler's claim noted on the August 4, 1982, "report of investigation determination" that the name of Butler's "last employing unit" was the Department of Mental Health and that the "name of other employer" was Cavallo Bus Lines. Butler's application for unemployment benefits was apparently denied, and a hearing was held on August 25, 1982, with Cavallo Bus Lines listed as the only employer respondent. The record is rather vague, but it appears as though Butler received no unemployment benefits whatsoever. Butler's application for unemployment benefits was again denied by a referee on September 1, 1982, and plaintiff appealed to the Board of Review of the State of Illinois Department of Labor, which affirmed the referee's denial of the claim for the stated reason that Butler had voluntarily left his part-time job without good cause attributable to Cavallo Bus Lines as his employer. The Board of Review found that Butler had left his bus driving job because it did not pay "sufficient wages to warrant continuing this employment without the benefit of simultaneously receiving wages from another full-time job." The Board stated that this did not constitute good cause for leaving work that was attributable to the employer within the meaning of section 601(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 431). Moreover, the Board asserted that Butler, who drove a bus from his home in Litchfield to Springfield every morning and then back to Litchfield every evening, could have used the extra hours spent in Springfield while waiting to make the return trip to Litchfield to search for and obtain other work; and if his wages were lower than his weekly benefit amount, he could have filed a claim for benefits.

Butler then appealed to the circuit court of Montgomery County, which reversed the referee's and the Board's denial of benefits, finding that "the State of Illinois had constructively terminated Butler's em-

ployment with Cavallo Bus Lines." The Board of Review of the Illinois Department of Labor then initiated the instant appeal.

■ The function of this court on review is to ascertain whether the Board's findings are supported by the manifest weight of the evidence. We may not substitute our own judgment or overturn the Board's findings unless they are not supported by substantial evidence in the record. *Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 671, 393 N.E.2d 638, 642; *Winklmeier v. Board of Review* (1983), 115 Ill. App. 3d 154, 155, 450 N.E.2d 353, 354.

It appears from the record that Butler has been denied unemployment benefits on the theory that he did not become unemployed and therefore did not become entitled to benefits until he left Cavallo; and that because he left that position voluntarily without good cause attributable to Cavallo, he is not entitled to any benefits.

■ Although Butler did not address this point in his brief, it would appear that he is entitled to benefits based on the fact that he was involuntarily laid off by DMH. Regardless of the circumstances under which he left his part-time job, he became entitled to these benefits when he was laid off. (See Ill. Rev. Stat. 1981, ch. 48, par. 349.) Under section 239 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 349), "[a]n individual shall be deemed unemployed [and therefore entitled to benefits] in any week *** of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount." From this it may be deduced that Butler became entitled to benefits at the time that he was laid off by DMH. The fact that he held a part-time job did not preclude him from receiving benefits. Consequently, the circumstances of his leaving his part-time job should not affect the receipt of benefits due to him as a result of being laid off by DMH.

However, from the record there is no indication of why DMH was apparently not involved in the proceedings. There is also no indication that DMH was notified of the claim against it by the claims adjudicator.

DMH was listed by the claims adjudicator as the "last employing unit" and thus should have been a party to the proceeding. DMH also should have been notified of the claim against it. Section 701 provides: "On the basis of the 'finding,' the claims adjudicator *** shall promptly notify the claimant thereof and shall notify his most recent employing unit that such claim has been filed. The claims adjudicator shall promptly notify the claimant, and such other party to the 'finding' as the Director may by regulation prescribe, of his 'finding,' to the extent of such party's interest in the 'finding.' " (Ill. Rev. Stat. 1981, ch. 48, par. 451.) Other sections of the Act also require notification to interested parties. See Ill. Rev. Stat. 1981, ch. 48, pars. 452, 453, 471, 473.

Even if notification to DMH was overlooked initially, DMH could have been easily added as a party during the benefit appeal process. Under section 805 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 474a), "[t]he Director, Referee, and the Board of Review, in any hearing involving benefit claims, may add parties, whenever in his or its discretion, it is necessary to the proper disposition of the case. Such additional parties shall be entitled to reasonable notice of the proceedings and an opportunity to be heard."

Because the record is incomplete, we are unable to determine DMH's role in the proceedings. We believe that Butler, although he left his part-time job voluntarily, may be entitled to benefits based on being laid off from DMH, but this must be determined after DMH has had an opportunity to be heard. Thus, we remand this case back to the Department of Labor for further findings regarding DMH.

■ We now turn to the more difficult question of whether Butler is entitled to unemployment benefits as a result of his employment with and subsequent leaving of Cavallo. In order for him to be so entitled under section 601A of the Act, Cavallo itself must have caused Butler to leave unless the term "employing unit" as it is used in that section may be interpreted to include his previous employer, DMH, so that Butler's leaving of Cavallo may be attributed to DMH. In considering Cavallo's responsibility for Butler's leaving, we find that the case of *Minfield v. Bernardi* (1984), 122 Ill. App. 3d 97, 460 N.E.2d 766, controls the result here. In that case, Thelma Minfield worked full-time for the city of Chicago and also worked part-time for Marshall Field and Company (Field's). On December 9, 1981, she was discharged by the city of Chicago; and on January 3, 1982, Minfield left her job at Field's after her request for full-time work had been denied. She told the referee that she left Field's because she "needed more money," "couldn't afford to pay [her] baby-sitter," and "needed more hours." (122 Ill. App. 3d 97, 99, 460 N.E.2d 766, 767.) The court held that Minfield was not entitled to unemployment compensation based on her last employment with Field's, since she did not leave Field's with good cause attributable to Field's. The court observed that Field's had done nothing to alter the terms of Minfield's employment or her compensation and found that Minfield left the employ of Field's due to dissatisfaction with her wages and that that was not good cause attributable to Field's within the meaning of the statute.

Similarly, in the instant case, Butler left the employ of his part-time employer, Cavallo, because of dissatisfaction with his wages. Cavallo did not alter the terms, conditions, hours, or compensation of Butler's job. The only change was that Butler no longer worked in Springfield

for DMH, with the result that his bus driving job with Cavallo was less lucrative and less convenient. Because Butler's leaving of Cavallo may in no way be attributable to any actions on the part of Cavallo, we must conclude that Butler's leaving of Cavallo was without good cause attributable to Cavallo. Since it is quite clear that Cavallo did not cause Butler to quit driving the bus, we are faced with the question of whether Butler's leaving of Cavallo was so closely related to his being laid off by DMH that his leaving of Cavallo may be attributable to DMH. We find that it was not.

We are aware of the fact that an argument could be made that, in amending section 601(A) in 1981 to deny benefits to a claimant who left voluntarily "without good cause attributable to the employing unit," the legislature, with an eye to the case of *John S. Barnes Corp. v. Board of Review* (1965), 55 Ill. App. 2d 102, 204 N.E.2d 20, left open the question of whether "employing unit" may be interpreted to include a previous or other employer who in some way caused the claimant to leave a job, resulting in his ultimate unemployment. However, we need not address that question here, because the instant case may be distinguished from the *Barnes* case on its facts. Unlike the claimant in the instant case, the claimant in *Barnes* left his second employer out of necessity, in that particular case medical necessity. He needed surgery for injuries that he had sustained at the first job. Here, however, Butler was in no way compelled to leave his bus-driving job as a result of being laid off by DMH. He quit only because he decided the benefit of the wages he received for driving the bus was outweighed by the inconvenience he suffered in having to drive to Springfield every day. We are, therefore, not persuaded that DMH's termination of Butler was sufficient under the Act for us to find that Butler's leaving of Cavallo is attributable to DMH. As a result, Butler is not entitled to unemployment benefits for his leaving of Cavallo based either on the actions of Cavallo or on the actions of DMH.

For the reasons stated above, we reverse the judgment of the circuit court of Montgomery County and remand this cause back to the Department of Labor for further findings consistent with the views expressed herein.

Reversed and remanded.

KARNS and HARRISON, JJ., concur.