(No. 52593.—

INLAND STEEL COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Gene Bagwell, Appellee).

*Opinion filed May 22, 1980.*

Carter Harrison and Elmer Jenkins, of Benton, for appellant.

Feiger, Quindry, Molt & Harvey, of Fairfield (Morris Lane Harvey, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

An arbitrator awarded permanent total disability compensation to claimant, Gene Bagwell, for an accidental back injury which arose out of and in the course of his employment with respondent, Inland Steel Coal Company. After receiving additional evidence, the Industrial Commission sustained the arbitrator's decision, and the circuit court of Franklin County confirmed. Respondent now appeals, claiming that the Commission's finding of total and permanent disability is against the manifest weight of the evidence.

On October 21, 1975, claimant, a 50-year-old underground mechanic for respondent, was lying on his side while working on a piece of equipment called a "joy miner" when an underground mining tractor struck him on the back, head and right shoulder, pinning claimant under the joy miner. Other employees who were in the area helped to extricate him. Although he noticed that his back, shoulder and legs hurt, claimant finished work on the piece of equipment, but then sat down for the remainder of his shift. The next day, claimant saw Dr. Talivaldes Kisle, the company doctor, who gave him pain pills and a heat treatment and sent him back to work. Claimant testified that, upon his return to work, he could not lift anything heavy because of back pain. On December 11, 1975, claimant saw Dr. James Chow, to whom claimant was referred by Dr. Kisle. Upon Dr. Chow's recommendation, claimant stopped working and subse-

quently entered the hospital on January 7, 1976, for five days of therapy and treatment. Claimant saw Dr. Chow numerous times thereafter. The day following an examination by Dr. James McClure, to whom claimant had gone on May 10, 1976, claimant returned to work. He worked sporadically until January of 1977. According to claimant, he could not lift anything, he had trouble walking, his right arm hurt, his legs and back often got numb, and he sometimes did not get out of bed because of back pain. Upon the advice of Dr. David Schreiber, who claimant began seeing on December 10, 1976, he stopped working and has not worked since that time.

Claimant testified that his condition has gradually advanced. Sometimes he falls because his right leg gives out, and he has bladder, bowel and sexual problems. Claimant had previously suffered a back injury on February 27, 1973, when a pile of coal fell on him and caused compression fractures to his T-12 and L-1 vertebrae. Plaintiff fully recovered from this injury, however, returned to his regular employment and, according to claimant, suffered no back problems until the injury for which he presently seeks compensation.

Depositions of several doctors were introduced at the arbitration hearing. Dr. Schreiber stated that, upon examining claimant, he detected a dorsal gibbous (outward bowing) at the T-12/L-1 level, severe spasm of the lower back muscles, and limited back motion and flexion. Dr. Schreiber ordered X rays taken and, by comparing them to X rays taken after claimant's 1973 injury, discovered that the degree of compression of the T-12/L-1 vertebrae had approximately doubled. Upon subsequent examination of claimant, Dr. Schreiber found him to be suffering from spinal cord compression and myelopathy, along with continued degeneration of the fractured vertebrae, all resulting from the October 21, 1975, injury. Dr. Schreiber opined, based upon the foregoing and upon

the result of a myelogram performed on June 13, 1977, that the instant injury has caused claimant to become totally and permanently disabled, and that he may need surgical intervention and stabilization of the spine.

Dr. Schreiber also testified at the hearing on review before the Commission, where he stated that he had examined claimant twice since the arbitration hearing and again detected the dorsal gibbous, muscle spasm and limitation of motion, as well as hyperactive reflexes. Furthermore, claimant was tested for the Babinski sign with positive results, which, assertedly, reveals progression of the spinal cord injury. Dr. Schreiber again stated that claimant is totally and permanently disabled, unable to do labor or work at a desk job; that the more activity the claimant engages in, the more quickly his condition will advance, which could result in complete loss of the use of his legs. Dr. Schreiber concluded that claimant's life or health could be endangered if he attempted to return to any type of work.

Respondent contends that the testimony of claimant and of Dr. Schreiber constitute the only evidence favoring an award for total and permanent disability, and that such evidence is repeatedly contradicted by the record. It is respondent's position that claimant suffered only a minor back injury and, therefore, is only partially disabled. Respondent presented depositions of two doctors who had examined claimant. Although admitting that degeneration can occur over a period of time following spinal cord compression, one of the doctors concluded that claimant could work in a coal mine if he avoided heavy lifting and repeated bending. The other doctor concluded that claimant was not disabled and that he could perform manual labor. On cross-examination, however, this doctor disclosed that he did not perform the Babinski test. Respondent also points to the deposition of Dr. Chow, who concluded that claimant was suffering from a severe soft-

tissue injury.

In addition to the evidence adduced from claimant and Dr. Schreiber, claimant presented the deposition of Dr. Raymond Coss, who had treated claimant following the 1973 injury. He stated that the initial compressions from that injury were minimal and that X rays taken during the course of treatment revealed no further compression. In Dr. Coss' opinion, increased compression of a fracture is often caused by a subsequent severe trauma; that the accident on October 21, 1975, could have caused further compression.

It is the Commission's function to resolve conflicting medical opinions, and its findings will not be reversed unless they are found to be against the manifest weight of the evidence. (*Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273, 277; *McIntire v. Industrial Com.* (1971), 49 Ill. 2d 239, 242; *Pillsbury Mills, Inc. v. Industrial Com.* (1958), 14 Ill. 2d 23, 27.) The record here discloses sufficient evidence from which the Commission reasonably could have determined that claimant's injury on October 21, 1975, caused him to become disabled to the point that he is unable to engage in any type of employment. Competent evidence of claimant's limited activities does not require a contrary finding. An employee need not be reduced to a state of total physical and mental incapacity or helplessness before total and permanent disability can be awarded. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 360; *C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 488-89.) It was sufficient for the Commission to find that any services which claimant can possibly perform are so limited in quantity, dependability or quality that there is no reasonably stable market for them. (*Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271, 275; *E. R. Moore Co. v. Industrial Com.* (1978),

71 Ill. 2d 353, 361-62; *C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278.) The Commission's determination that claimant is totally and permanently disabled is not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*